IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 7 |
| JOSEPH C. TUFANO dba | : | |
| FAST TRACK ENTERPRISES and | : | CASE NO. 1-10-bk-07692 RNO |
| REBECCA REEVES-TUFANO, | : | |
| | : | |
| Debtors | : | |

# **OPINION**[1]

The Debtors moved to convert to this Chapter 7 case to a case under Chapter 13 of the Bankruptcy Code. The Chapter 7 Trustee timely objected to the conversion alleging that the Debtors had been untruthful and that they could not propose a confirmable Chapter 13 plan. For the reasons stated below, I will overrule the Chapter 7 Trustee's Objections and grant the Motion to Convert to Chapter 13.

**I.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(2). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**II.   Facts**

On September 21, 2010, Joseph C. Tufano and Rebecca Reeves-Tufano ("Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Steven M. Carr, Esquire was subsequently appointed as the Chapter 7 Trustee ("Chapter 7 Trustee") in this case.

The Debtors filed their schedules of assets and liabilities as well as the Statement of Financial Affairs and other required documents. Original Schedule A - Real Property listed property in Stewartstown, Pennsylvania ("Residence") as being jointly owned with a scheduled

---

[1]   Drafted with the assistance of Ryan B. White, Esquire, Law Clerk.

value of $255,000.00. Schedule C - Property Claimed as Exempt claimed the entire value of the Residence, $255,000.00, as being exempt pursuant to the provisions of Pennsylvania law.

In the original Statement of Financial Affairs, Question Number 10 was answered by completing the box labeled "None". Question Number 10 of the Statement of Financial Affairs required the Debtors to list any transfers of property, other than in the ordinary course of business or financial affairs, within two years before the Chapter 7 filing.

The bankruptcy docket reflects the Chapter 7 Trustee's Initial Report and Meeting of Creditors Held being filed on October 21, 2010. On October 22, 2010, the Debtors filed an amendment to the Statement of Financial Affairs. The response to Question Number 10 - Other Transfers was amended to reflect a September 3, 2010 transfer of the Residence from the name of the male Debtor only to the names of the male and female Debtors, jointly. The amendment does not indicate whether any value was received for the transfer.

On October 28, 2010, an amendment to Schedule C - Property Claimed as Exempt was filed. In the amended Schedule C, the Debtors select what are commonly known as the "Federal Exemptions". Selection of the Federal Exemptions is allowed in bankruptcy cases filed in Pennsylvania pursuant to 11 U.S.C. § 522(b)(2)[2]. In the amended exemptions, an exemption was claimed in the Residence in the amount of $21,625.00 pursuant to § 522(d)(1).

On November 2, 2010, a document titled "Stipulation to Avoid Transfer Pursuant to Section 548" was filed herein. The three-paragraph Stipulation provided for the avoidance of the transfer of the Residence from the male Debtor alone to his wife and him, jointly.

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

On December 6, 2010, new bankruptcy counsel entered her appearance for the Debtors. Simultaneously with this entry of appearance, original bankruptcy counsel, James M. Bach, Esquire, withdrew his appearance for the Debtors.

On December 28, 2010, the Debtors filed a Motion to Convert Case to Chapter 13 ("Conversion Motion"). The Conversion Motion was noticed to creditors and on January 12, 2011, the Chapter 7 Trustee filed a timely objection to the Conversion Motion. On February 22, 2011, the Debtors, through new counsel, filed amendments to Schedules A, C, I, and J. Schedule A listed the Residence as being owned by the male Debtor only with a value "minus cost of sale" of $240,300.00. The second amended Schedule C maintained the Federal Exemption election and continued to claim an exemption in the amount of $21,625.00 in the Residence pursuant to § 522(d)(1).

Amended Schedule I - Current Income of Individual Debtor(s) generally differs from Original Schedule I in several ways. First, it reflects that the male Debtor now works for a third party employer; he was self-employed at the time of the Chapter 7 filing. Second, the Amended Schedule I shows that the female Debtor is now employed; she was unemployed at the time of the Chapter 7 filing. Further, the Original Schedule I showed a combined average monthly income of $2,840.00. It is noted that this figure included $1,200.00 per month denoted as "Help from family". Amended Schedule I shows combined average monthly income of $3,977.26. Amended Schedule I shows no indication of "Help from family".

Amended Schedule J - Current Expenditures of Individual Debtor(s) differs from original Schedule J in that the Original Schedule J included expenses totaling $2,968.00 - it also shows an average monthly net income of -$128.00. Amended Schedule J shows total monthly expenses

3

of $3,427.00 and monthly net income of $550.26. Amended Schedule J also reflects increases in the Debtors' household expenses and elimination of any business expenses.

An evidentiary hearing was held on the Conversion Motion on February 24, 2011. The Chapter 7 Trustee and the Debtors have filed post-hearing briefs setting forth their positions and the Conversion Motion is now ripe for decision.

### III. Discussion

#### A. Conversion Under § 706(a)

Section 706(a) of the Bankruptcy Code provides:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this title is unenforceable.

The United States Supreme Court considered whether a Chapter 7 debtor has an absolute right to convert to Chapter 13 in the case of *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105 (2007). In *Marrama*, the debtor transferred a valuable residence to a self-created trust seven months before filing his Chapter 7 bankruptcy. The debtor disclosed that he was the sole beneficiary of the trust that owned the property but he listed the property's value as zero. The debtor in *Marrama* also denied that he had transferred any property, other than in the ordinary course of business, during the year preceding the filing of his petition. After the Chapter 7 trustee indicated an intention to recover the real property as an asset of the estate, the debtor in *Marrama* filed a notice of conversion to Chapter 13. Objections to the conversion were filed by the Chapter 7 trustee and a secured creditor.

Justice Stevens authored the majority opinion in *Marrama*. The majority did not find an

4

explicit absolute right to convert to Chapter 13. It noted that the right to convert provided for in § 706(a) is conditioned by the language in § 706(d). Section 706(d) provides:

> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

The Supreme Court went on to note:

> There are at least two possible reasons why Marrama may not qualify as such a debtor, one arising under § 109(e) of the Code, and the other turning on the construction of the word "cause" in § 1307(c). The former provision imposes a limit on the amount of indebtedness that an individual may have in order to qualify for Chapter 13 relief. More pertinently, the latter provision, § 1307(c), provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief. None of the specified causes mentions prepetition bad-faith conduct (although paragraph (10) does identify one form of Chapter 7 error-which is necessarily prepetition conduct-that would justify dismissal of a Chapter 13 case). Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause". See n. 1, *supra*. In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of " 'honest but unfortunate debtor[s]' " that the bankruptcy laws were enacted to protect. See *Grogan v. Garner*, 498 U.S. at 287, 111 S.Ct. 654. The text of § 706(d) therefore provides adequate authority for the denial of his motion to convert.

*Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 372-374, 127 S.Ct. 1105, 1110-1111 (2007).

The Supreme Court in *Marrama* did not delineate a specific test for a bankruptcy court to use in determining whether or not a debtor's attempted conversion from Chapter 7 to Chapter 13

5

would be bad faith. Prior to the *Marrama* decision, there was case law in the Third Circuit enumerating factors which a court should consider in determining whether a Chapter 13 case should be dismissed pursuant to § 1307(c). See *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996); *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). The general thrust of the case law is that the Bankruptcy Court should make a fact-intensive inquiry and consider the totality of the circumstances presented.

I agree with other courts that it is logical to use the same "totality of the circumstances" analysis, which is applied to § 1307(c) motions to dismiss, to analyze the propriety of a § 706(a) motion to convert.

The Eastern District of Pennsylvania has stated that a court should consider the following factors in evaluating a § 706(a) motion to convert from Chapter 7 to Chapter 13:

> (i) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors);
>
> (ii) whether the debtor can propose a confirmable chapter 13 plan;
>
> (iii) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;
>
> (iv) the effect of conversion on the efficient administration of the bankruptcy estate; and
>
> (v) whether conversion would further an abuse of the bankruptcy process.

*In re Piccoli*, 2007 WL 2822001, *7 (E.D.Pa. 2007).

    **B.**     **Bad Faith Considerations**

In this case, the Debtors argue that any error in the Original Statement of Financial Affairs and any misstatements they may have made during the Section 341 Meeting were caused by erroneous advice received from original bankruptcy counsel. Debtors' Br. 10. At the hearing in this matter, the male Debtor testified that he first met with Attorney Bach in May, 2010. He testified that he told Attorney Bach that he owned the Residence individually; he also provided counsel a general listing of his assets and liabilities. He testified that Attorney Bach suggested that the male Debtor consider transferring the Residence from individual ownership to joint ownership with his wife, the female Debtor. He testified that Attorney Bach indicated that he would prepare such a deed for $150.00, or, the Debtors could have the transfer handled by another attorney. The male Debtor testified that Attorney Bach wrote on the back of his business card words to the effect of "$1.00 from Grantor back to Grantor and Grantee".

The Chapter 7 Trustee essentially concedes that original bankruptcy counsel advised the Debtors to make the pre-petition transfer of the Residence and to omit the transfer in response to Question Number 10 of the Statement of Financial Affairs. Trustee's Br. 1. However, the Chapter 7 Trustee further argues that the Debtors committed perjury at the Section 341 Meeting and that shows an absence of good faith. The Chapter 7 Trustee maintains that the testimony given by the Debtors at the Section 341 Meeting, even if made upon advice of counsel, is grounds to deny the Conversion Motion.

There is, of course, no objective test to determine whether or not the Conversion Motion was filed in good faith. A number of reported cases have denied a motion to convert to Chapter 13 where the debtor omitted an asset from his or her bankruptcy schedules. See *In re Pakuris*, 262 B.R. 330, 336 (Bankr. E.D.Pa. 2001); *In re Shafer*, 2009 WL 1651294, *8 (Bankr. D.N.J.

7

2009); *In re Piccoli*, 2007 WL 2822001, *8 (E.D.Pa. 2007) (debtor did not disclose the full value of the asset).

I find the above cases somewhat distinguishable from the case at bar. Here, the Debtors did not fail to schedule the Residence as an asset. However, in the Original Statement of Financial Affairs, they did not disclose the pre-petition transfer from the male Debtor alone into the names of both Debtors.

There was unrebutted testimony that the transfer of the real property was effected upon the advice of original bankruptcy counsel, Attorney Bach. It is noted that Attorney Bach did not testify at the hearing on the Conversion Motion. The male Debtor also testified that two days before the Section 341 Meeting, Attorney Bach advised him, if he were asked if he had transferred any property in the last ninety days, "that I was to reply no". It is noted that no hearsay objection was interposed to the male Debtor's testimony concerning what Attorney Bach told him.

There is a rather slim record for me to analyze whether the Conversion Motion was brought in good faith. I can and do take judicial notice pursuant to Federal Rule of Evidence 201 of the docket in this bankruptcy matter. *In re Argus Group 1700, Inc.*, 206 B.R. 737, 742 (Bankr. E.D.Pa. 1996). The fact that a bankruptcy judge takes judicial notice of the bankruptcy court's records does not infer the truth of the facts contained in the documents which may still have to be proven by admissible evidence. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008).

There is unrebutted testimony on the record that Attorney Bach gave the Debtors, at the very least, erroneous advice. What bearing should that have on the disposition of the Conversion

8

Motion? Reliance on advice of counsel made in good faith may negate an intent to defraud under § 727(a)(4)(A). *In re Petersen*, 323 B.R. 512, 519 (Bankr. N.D.Fla. 2005). Section 727(a)(4)(A) is often referred to as the "false oath" discharge exception. I recognize that advice of counsel may not serve as a defense if the client had not disclosed all relevant facts to an attorney who based his or her advice on incomplete or incorrect facts. However, in this case, Attorney Bach could easily verify how the Residence was titled, at any point in time, by merely reviewing the recorded deeds which are public records. I consider it customary for bankruptcy counsel to conduct a search in the appropriate recorder of deeds' office as part of his or her preparation of bankruptcy schedules for a debtor/client. Also:

> A debtor's attorney also bears a significant degree of responsibility
> in assuring to the best of his of her ability that the schedules are
> complete and accurate before they are filed.

*In re Arnold*, 369 B.R. 266, 272 (Bankr. W.D.Va. 2007) (denying false oath exception under § 727(a)(4)(A) based upon advice of counsel).

I noted above the differentiation between this case and a case where a debtor failed to disclose an asset. The male Debtor was cross examined by the Chapter 7 Trustee concerning the advice he received from Attorney Bach concerning ownership of the Residence. In response to one question, the male Debtor testified "he told me I was covered under a PA customary law. If you get the property into your name and your wife's name. I told him that the house was important and we wanted to be protected". Pennsylvania state law does provide that property owned by a husband and wife is be held as tenants by the entirety. A husband or wife do not own separate interests in entireties property which can be reached by his or her individual creditors. *Stop 35, Inc. v. Haines*, 374 Pa.Super. 604, 607, 543 A.2d 1133, 1135 (1988); *In re*

9

*Houck*, 184 B.R. 21, 23 (Bankr. E.D.Pa. 1995). It has been my experience that the application of the Pennsylvania tenancy by the entireties provisions in Federal bankruptcy matters can befuddle seasoned, non-bankruptcy attorneys. I find it credible that the Debtors were misadvised, if not mislead, by Attorney Bach concerning the Residence. I believe it is reasonable to expect debtors to list all of the assets that they own when they file their bankruptcy schedules. I do not believe it is reasonable to expect debtors, even when represented by counsel, to understand the arcane nature of state exemption laws and the provisions of the Bankruptcy Code concerning pre-petition transfers.

It is significant to me that the Debtors have shown a general attempt to cooperate with the Chapter 7 Trustee and the Court in this matter. Nothing on the docket reflects any allegation by the Chapter 7 Trustee that the Debtors have failed to provide any requested information. Also, the factual summary above lists various amendments to the Schedules and Statement of Financial Affairs which appear to be a good faith attempt to correct any deficiencies in the Original Schedules and Statements. The Debtors appeared for questioning at the Section 341 Meeting and they both testified at the hearing on the Conversion Motion.

I find that the Debtors have not engaged in purposeful delay of these proceedings. A stipulation to avoid the transfer of the Residence was filed less than two weeks after the Section 341 Meeting without the Chapter 7 Trustee even filing an adversary proceeding. Also, the Debtors discharged Attorney Bach, filed a complaint against him with the Disciplinary Board of the Supreme Court of Pennsylvania, and obtained new bankruptcy counsel. New counsel filed the Conversion Motion as well as the February 22, 2011, amendments to Schedules A, C, I, and J.

The Debtors have taken steps to better their financial circumstances. The male Debtor left self-employment, obtained third party employment and has significantly increased his average earnings. The female Debtor testified that some of her health problems, which caused her to leave the workforce, had been resolved and she recently obtained new employment.

The Chapter 7 Trustee argues that the Debtors committed perjury at the Section 341 Meeting. The male Debtor was questioned by the Chapter 7 Trustee at the hearing on the Conversion Motion concerning some of his testimony at the Section 341 Meeting. No transcript of the Section 341 Meeting was offered into evidence. The Chapter 7 Trustee has well-discharged his duty to the creditors and the Court in this case. However, this record does not convince me that any purposefully false testimony was given by the Debtors at the Section 341 Meeting. Considering the totality of the circumstances, I cannot find an absence of good faith in the Debtors filing of the Conversion Motion.

### C.    Whether the Debtors Can Propose a Confirmable Plan

Another factor which I must consider is the question of the Debtors' ability to propose a confirmable Chapter 13 plan. Courts have recognized that conversion should not be permitted when it would serve no point, for example, where a debtor lacks sufficient income to fund a Chapter 13 plan. *In re Pakurkis*, 262 B.R. 330, 337 (Bankr. E.D.Pa. 2001); see also, *In re Shafer*, 2009 WL 1651294, *9 (Bankr. D.N.J. 2009); compare *In re Murray*, 377 B.R. 464, 470 (Bankr. D.Del. 2007).

The Chapter 7 Trustee's Objection to the Conversion Motion alleged, in part, that the Debtors lacked sufficient income to propose a feasible Chapter 13 plan. However, this allegation is not addressed in the Chapter 7 Trustee's Brief and the position appears to have been

11

abandoned.

No proposed Chapter 13 plan had been filed in this matter at the time the record was closed on the hearing on the Conversion Motion. Therefore, any consideration of the Debtors' ability to propose a confirmable Chapter 13 plan must be somewhat cursory. I do find that the Debtors are eligible to be debtors under Chapter 13 of the Bankruptcy Code pursuant to § 109(e). Currently, both Debtors earn regular income. I also find that the scheduled unsecured and secured debts in this case are well within the debt limitations for Chapter 13 relief. Section 109(e). Further, as noted above, Amended Schedule J shows a monthly net income of $550.26. Based upon these factors, I find that there is a reasonable likelihood that the Debtors can propose a confirmable Chapter 13 plan.

### D. Other Factors

I cannot find that allowing the conversion to Chapter 13 will occasion undue delay or prejudice to the creditors in this case. I note that there has been no motion for relief from the automatic stay filed by the secured creditor in this matter. Further, the docket does not reflect that the Chapter 7 Trustee had taken any steps to attempt to liquidate the Residence at the time the Conversion Motion was filed. No motion to sell the Residence was filed by the Chapter 7 Trustee. Nor was an application to employ a realtor or auctioneer filed. Thus, I cannot find that conversion would have a significant impact on the efficient administration of the bankruptcy estate.

In contrast, denying conversion would likely lead to liquidation of the Residence, with the attendant loss of the Debtors' non-exempt equity therein. It is my estimation that most of the difficulties encountered by each of the parties in this case stem from the advice given and actions

taken by original bankruptcy counsel for the Debtors. I believe this compounds the impact that denial of the Conversion Motion would have upon the Debtors.

Based upon all of the factors which I discussed at length in Section B, Bad Faith Considerations, I find that conversion would not further an abuse of the bankruptcy process.

**IV. Conclusion**

For all of the foregoing reasons, I will overrule the Objections of the Chapter 7 Trustee and grant the Conversion Motion. An order will be entered consistent with the foregoing Opinion.

By the Court,

_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: April 19, 2011

13